SIDNEY ALDRICH, EMPLOYEE, RESPONDENT, v. KROGER GROCER & BAK-
ING COMPANY, A CORPORATION, EMPLOYER, AND TRAVELERS INSUR-
ANCE COMPANY, A CORPORATION, INSURER, APPELLANTS.—69 S.
W. (2d) 1101.

Springfield Court of Appeals. February 20, 1934.

Rehearing denied April, 1934.

*Ward & Reeves* for appellant.

94

*W. L. Proffer* for respondent.

ALLEN, P. J.—This case is here on appeal by the employer and insurer, from judgment of the Circuit Court of Dunklin County, reversing the finding of the Workmen's Compensation Commission.

The claimant for about two years prior to February 15, 1932, the date of injury upon which his claim is founded, lived in or near Kennett, in Dunklin county.

For a year or more, prior to February 15, 1932, the date of the alleged injury, referred to in his claim for compensation, he frequented the Kroger Store in Kennett. Persons in charge of or employed at the store often directed him to perform odd jobs, which were in the nature of common labor, such as sweeping out, replenishing the fire, trimming vegetables, filling sacks with potatoes and moving merchandise about and performing miscellaneous services in and around defendant's store, for which he had for a long time previous to his injury, received uncertain and varying small sums of money, together with less salable fruits, vegetables, meats and other merchandise. He was placed on the pay roll of the store the latter part of February, 1932, about two weeks after the occurrence of the injury described in his claim.

The facts relating to the injury were in substance as follows:

On or about February 15, 1932, while claimant was putting some coal in the stove at the store, a lump fell off on the hearth, bursted and some of the particles flew up and hit him in the eye. He claimed that he had been instructed by defendant's employees, in addition to other work, to keep up the fire, which he said he had been doing when directed, for some time prior to his injury; testifying that the manager of the store had told him "To keep the fire going and that he had better not let it go out." That after getting the coal in his eye it got red and commenced hurting, stayed sore for some time and finally went out.

Claimant also testified that about a year or more previous to the time he got the coal in his eye, while sacking some potatoes for the Kroger Store, he got some "fuzz" in his eye, off of a tow sack. Employer and insurer contend that the evidence shows that claimant's injury, if any, was occasioned thereby. The claimant, however, insists that the ravelings off the tow sack which got into his eye the year previous, did not so far as he knew, cause him any particular

trouble, and did not result in the blindness of his right eye; nor did he make any claim therefor, but that his injury and the apparently resulting blindness, was from the coal in his eye.

Dr. Baldwin, a practicing physician at Kennett, Missouri, for claimant, testified that he was first consulted by claimant some time prior to February, 1932, fixed by his testimony as the previous year, and was told by claimant that he could not see good out of his right eye, but that he (Dr. Baldwin) was unable to recognize any reason for it, and that the appearance of claimant's eye at that time, showed no reason for defective vision. That he treated the eye with some simple solution. That he had no history of the claimant having gotten anything in his eye, after which it appears that the incident was closed, and the doctor saw no more of the claimant until some time in July, 1932, when, at the instance of the agent for insurer, the doctor examined claimant's eye. That this examination disclosed no disease of the right eye, but that he did find a cataract in claimant's eye "which caused complete blindness." That he so reported to the insurer, but in the course of his testimony would not say whether it was traumatic or not. That in his report to the insurance company he made a notation of traumatic cataract and that his opinion was rendered upon and by reason of his examination and the history of a trauma (that is the coal in claimant's eye) and further said, "I will say now that in accepting the fact that there is a cataract it is impossible to say that the trauma is not a contributing factor," nor did he testify that it was. He testified that he found no scar, but that he would not say that a scar would necessarily be present, and further said that there could be an injury to the crystalline lens that would leave no scar; and that an oculist, on examination of the eye with an ophthalmoscope, might be able to recognize a scar, but that in his examination of claimant's eye in July, it showed no reason for the loss of sight. While he stated that the injury described at the hearing of this claim was one of the recognized causes of traumatic cataract, but that it was impossible to say that a trauma was or was not a contributing factor to claimant's blindness.

Dr. Farabough, who denominated himself as an optometrist and formerly a physician in Arkansas, testified that he examined claimant's eye between the 25th of February and the 1st of March, 1932. In the right eye he found the extra sclerotic coat of the eye, called the cornea, inflamed, the blood vessels in that eye were much inflamed and the general appearance of the eye was very angry—looked like it had been lacerated or jagged with some foreign substance. The inflammation was very severe on account of which the entire retina could not be seen. He found a cataract on the right eye, from the effect of which claimant was blind in the right eye, which he said, in his opinion, was the result of traumatism.

The evidence was that about or near a year previous to February

15, 1932, claimant got some lint or "fuzz" in his eye, while sacking potatoes for defendant, Kroger Store, but claimant testified that while his eye became red, it caused him little trouble, appeared to be of small consequence, continued but a few days, and did not prevent his working as usual; that he continued to do his tasks about the store, unhampered by any trouble with his eye, until after the particles of coal struck him in the eye, in February, 1932, after which, from the evidence heard by the referee, it was by him found that claimant had suffered a permanent partial disability, for which he was awarded compensation in the sum of $6 per week for 108 weeks, payments to begin as of February 15, 1932, subject to modification and review, as provided by law, which award was by the commission, with one dissenting vote, reversed and set aside. The finding of facts by the commission was as follows:

"We find from the evidence that the condition of the employee was due to other causes, and was not the result of an accident, arising out of and in the course of his employment on February 15, 1932."

The circuit court, without assigning any reason therefor, reversed and set aside the award of the compensation commission, and remanded the cause to the commission, from which judgment the defendants appealed to this court.

A witness, Jeffors, called by appellants, testified that claimant the year previous to the coal incident had complained of having gotten something in his eye, which was red, and claimant was rubbing it, and complained that he had gotten something in it; and that he often complained of his eye hurting. That was back a year or a year and a half previous to the time he got the coal in it.

Dave Ray, the manager of the store testified that claimant for a year or more complained of his eye and said he had gotten lint in it, off of a tow sack. That he saw no difference in the eye after the coal incident. "I knew nothing about his claim that coal had gotten in his eye until we had notice of his claim in this case. That was about June, 1932." That he never employed claimant until about the first of March, 1932, after the injury complained of and before witness had heard of his alleged injury or of his making any claim for having been injured.

William Benson, supervisor of the Kroger Store had lived in Kennett, for some time prior to February 15, 1932, was around the store most every day and knew claimant. He said claimant was never employed by the store until about February 29, 1932, when he was put on the pay roll. Before that Mr. Ray personally paid him for whatever he did.

B. L. Foster, was the butcher and meat cutter at the store. He said claimant was not employed by the store but sometimes voluntarily helped him in putting the meat in the ice box, or some small

job, and that he sometimes gave him some pieces of unsalable meat, but paid him no money.

The finding of the commission, as aforestated was "That the condition of the employee was due to other causes and was not the result of an accident, arising out of and in the course of his employment on February 15, 1932."

Since the evidence heard and considered by the compensation commission, relating to the question of the cause of the injury and the time it was received, is conflicting, or was at least determined by the commission, to be insufficient to support a finding for claimant, upon the allegations in the written claim made and filed with the commission, therefore the question submitted to this court becomes one requiring it to be considered by us, if at all, on the question of the weight of the evidence, which neither the circuit court nor this court is empowered to do in such cases, but on the contrary is specifically prohibited from doing.

The law upon the proposition mentioned has been so often and distinctly enunciated, that we are citing only a few of the latest cases in support of our views thereon, to-wit: Weiler et ux. v. Peerless White Lime Co. (Mo. App.), 64 S. W. (2d) 125; State ex rel. Probst v. Haid et al. (Mo. Sup.), 62 S. W. (2d) 869; King v. Mark Twain Hotel (Mo. App.), 60 S. W. (2d) 675; Lanahan v. Press Brick Co. (Mo. App.), 55 S. W. (2d) 327; Eiser v. Painting Co. (Mo. App.), 60 S. W. (2d) 636.

While there is a conflict of testimony, yet there is sufficient competent testimony, which if believed, supports the finding of the commission, that the claimant failed to prove that the accident causing Aldrich's injury, arose out of his employment as alleged in his claim. [Probst v. St. Louis Basket & Box Co., 52 S. W. (2d) l. c. 503; (Same case Mo. Sup.), 62 S. W. (2d) 869, l. c. 872.]

In the last above case, l. c. 872, the court said: "It is the finding of facts, not the failure to find facts, which would defeat the award. Section 3343 (R. S. 1929) declares that a court may set aside the award, not because the commission failed to find facts which would support it, but because the commission found facts which would not support it."

The commission in the present case found from "the evidence that the condition complained of by employee was due to other causes, and was not the result of an accident arising out of and in the course of his employment, on February 15, 1932," which was the date of the accident alleged to have caused the loss of claimant's eye.

It follows, therefore, that the finding of the commission that compensation must be denied, should have been affirmed. That the judgment of the circuit court should be, and the same is reversed and the cause remanded, with the direction to enter judgment affirming the award of the Workmen's Compensation Commission hereinbefore made. *Smith* and *Bailey, JJ.,* concur.